IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMERGENCY HEALTH CENTRE AT WILLOWBROOK, L.L.C. and EMERGENCY WILLOWBROOK, P.A., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-10-4559 |
| UNITEDHEALTHCARE OF TEXAS, INC. and UNITEDHEALTHCARE INSURANCE COMPANY, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for partial summary judgment (Docket Entry No. 24) filed by defendants UnitedHealthcare of Texas, Inc. and UnitedHealthcare Insurance Company (collectively: "UHC").[1]  Plaintiffs Emergency Health Centre at Willowbrook, L.L.C. ("EHC") and Emergency Willowbrook, P.A. ("PA") (collectively: "Plaintiffs") responded[2] and UHC replied.[3]  For the

---

[1]Defendants' Motion for Partial Summary Judgment and Brief in Support ("UHC's Motion"), Docket Entry No. 24.

[2]Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment and Brief in Support, Objections and Motion to Strike Defendants' Summary Judgment Evidence ("Plaintiffs' Response"), Docket Entry No. 27.

[3]Defendants' Reply in Support of Motion for Partial Summary Judgment and Brief in Support ("UHC's Reply"), Docket Entry No. 28.

reasons stated below, the court will grant in part and deny in part UHC's Motion.


## I.  **The Plaintiffs' Allegations and Causes of Action**

The Plaintiffs allege that EHC "conduct[s] business as a freestanding emergency department or comparable facility,"[4] that PA "provides emergency medical care to patients through physicians licensed to practice medicine within the State of Texas,"[5] and that UHC is composed of insurance companies whose members have been treated at EHC.[6]  EHC makes the following allegations regarding UHC's payment for services rendered to UHC members:

> Initially, beginning in September 2007 when the EHC was formed, UHC paid EHC and P.A. for treating emergency medical conditions at a rate comparable to a hospital emergency department and paid reasonable and customary charges and professional fees for emergency medical services.  UHC, however, unilaterally later decided that EHC and P.A. should receive either a reduced payment or no payment at all for their facility or emergency services.[7]

The Plaintiffs allege that UHC's refusal to reimburse them violates Texas law.[8]

---

[4]Plaintiffs' Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-1, p. 2 ¶ 2.

[5]Id. at 2 ¶ 3.

[6]Id. at 4 ¶¶ 11-12.

[7]Id. at 4-5 ¶ 12.

[8]Id. at 5-6 ¶¶ 13-14.

Plaintiffs seek "the reasonable, usual and customary charges for treating UHCs' Plan members for emergency medication conditions comparable to a hospital or hospital affiliated emergency department."[9]  Plaintiffs allege violations of the Texas Insurance Code, the Texas Prompt Pay Act and Texas Insurance laws, and quantum meruit.[10]

**A.    Count One: Insurance Code Violations ("Chapter 541 Claims")**

Plaintiffs allege that UHC's actions violate various provisions of the Texas Insurance Code.  Specifically, Plaintiffs allege violations of the following statutes (as summarized by the court):

    1.    Tex. Ins. Code § 541.051 (on misrepresentations concerning a policy);

    2.    Tex. Ins. Code § 541.052 (on misrepresentations regarding the business of insurance);

    3.    Tex. Ins. Code § 541.060 (on misrepresentations regarding coverage to a claimant);

    4.    Tex. Ins. Code § 541.061 (on untrue or misleading statements); and

    5.    Tex. Bus. & Comm. Code § 17.46 (on deceptive trade practices).[11]

---

[9] Id. at 8 ¶ 17.

[10] Id. at 8-12.

[11] Id. at 9-10 ¶ 20.

In the section of the Original Petition setting out the factual basis for the Plaintiffs' causes of action, the Plaintiffs allege that "UHCs' acts, omissions and continued refusal to make payment to EHC and P.A. for the valid covered claims violates the Texas Insurance Code § 1271.155 Emergency Care and constitutes a false or misleading act or practice in the business of insurance."[12]   The Plaintiffs further allege that "the actions of UHC in refusing to make payments to EHC and P.A. [v]iolate the provisions of the Texas Insurance Code, Chapter 1301 et. seq."[13]

**B.   Count Two: Violations of the Texas Prompt Pay Act and Texas Insurance Laws ("Prompt Pay Act Claim")**

Plaintiffs allege that "UHC has intentionally denied or delayed payments of EHC's and P.A.'s clean claims for emergency medical care."[14]   Plaintiffs allege that they are covered by § 1301.069 of the Texas Insurance Code, which provides the following:

> The provisions of this Chapter relating to prompt payment by an insurer of a physician or health care provider and to verification of medical care or health care services apply to a physician or provider who:
>
>> (1) is not a preferred provider included in the preferred provider network; and

---

[12]<u>Id.</u> at 5 ¶ 13.

[13]<u>Id.</u> at 6 ¶ 14.

[14]<u>Id.</u> at 11 ¶ 24.

-4-

(2)   provides to an insured[:]

([A]) care related to an emergency or its
attendant episode of care as required by
[s]tate or [f]ederal law.[15]

## C.   Count Three: Quantum Meruit

Plaintiffs allege that "[f]ailure to allow Plaintiffs to recover for the reasonable value of their services and supplies would result in the unjust enrichment of Defendants."[16]   Plaintiffs therefore seek "to recover in quantum meruit for the usual, reasonable and customary emergency medical services and supplies provided to the Defendants' Plan Members which Defendants knowingly and willingly refused to pay or underpaid even though the services and supplies provided to each Plan Member were beneficial, and of substantial value."[17]

## II.   Summary Judgment Standard

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[15]Id. at 6-7 ¶ 14 (quoting Tex. Ins. Code § 1301.069).

[16]Id. at 11-12 ¶ 26.

[17]Id. at 11 ¶ 26.

party.   Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511

(1986).   The Supreme Court has interpreted the plain language of

Rule 56(c) to mandate the entry of summary judgment "after adequate

time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear

the burden of proof at trial."   Celotex Corp. v. Catrett, 106

S. Ct. 2548, 2552 (1986).   In reviewing the evidence "the court

must draw all reasonable inferences in favor of the nonmoving

party, and it may not make credibility determinations or weigh the

evidence."   Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct.

2097, 2110 (2000).   "[T]he burden on the moving party may be

discharged by 'showing'-that is, pointing out to the district

court-that there is an absence of evidence to support the nonmoving

party's case."   Celotex, 106 S. Ct. at 2554; see also Bustos v.

Martini Club Inc., 599 F.3d 458, 468 (5th Cir. 2010) ("On summary

judgment, once the moving party establishes that there are no

factual issues, the burden shifts to the nonmoving party to produce

evidence that a genuine issue of material fact exists for trial.

The nonmoving party must then 'go beyond the pleadings,' and by

affidavits or other competent summary judgment evidence cite

'specific facts' that show there is a genuine issue for trial.")

(internal citations omitted).

### III.   <u>UHC's Motion for Partial Summary Judgment</u>

UHC limits its summary judgment motion to the claims brought by EHC and by PA regarding emergency services.  UHC does not seek summary judgment on claims brought by PA regarding non-emergency services or on the counterclaims brought by UHC.[18]  UHC lists the relief it seeks by summary judgment as follows:

(i) against Plaintiffs on their Chapter 1301 claim, inasmuch as the subject services were not required by state or federal law, rendering the statute inapplicable;

(ii) that EHC take nothing, as it was not a licensed hospital, was not entitled to facility fees without a licensing, though all of its claims are for facility fees;

(iii) that Plaintiffs were out-of-network providers; claims for benefits under the plans were not subject to an in-network level of benefits by virtue of the Texas Insurance Code or otherwise because EHC was not a "licensed emergency facility or comparable facility";

(iv) that ERISA preempts Plaintiffs' Texas Insurance Code and quantum meruit claims for ERISA-governed plans, including but not limited to those identified in the Notice of Removal; and

(v) that Plaintiffs' quantum meruit claims fail under state law because the services were not rendered to UHC.[19]

---

[18]UHC's Motion, Docket Entry No. 24, p. 3 n.2 ("This motion seeks partial summary judgment insasmuch as it does not address (i) UHC's counterclaim against Plaintiffs or (ii) PA's claims for professional fees to the extent they are based on non-emergency services.").

[19]<u>Id.</u> at 21.

Although a number of the arguments advanced by UHC and the Plaintiffs are relevant to more than one of the Plaintiffs' causes of action, the court's opinion will only address the arguments that are necessary to decide the propriety of each cause of action.[20] Whether UHC should be granted summary judgment on the Prompt Pay Act claims can be decided on the basis of whether the Plaintiffs were required under state or federal law to provide the emergency services.  Whether UHC should be granted summary judgment on the Chapter 541 claims can be decided partly on the basis of whether EHC was a comparable facility and partly on the basis of whether EHC was a provider.  Whether UHC should be granted summary judgment on the quantum meruit claim can be decided on basis of whether ERISA preempts this claim.

## A.   The Prompt Pay Act Claim

The Plaintiffs can recover under the Prompt Pay Act only if the services in question were required by state or federal law. Insurers who receive claims from "preferred providers" are required to make determination and payment on a claim within a set period of time.   Tex. Ins. Code § 1301.103 (version effective September 1, 2005, to August 31, 2011).   The scope of this requirement is expanded beyond preferred providers in the following section:

---

[20]Any argument made by either party but not addressed in the analysis that follows was judged by the court to be either unnecessary to the disposition of UHC's Motion or to lack sufficient merit to warrant discussion.

The provisions of this chapter relating to prompt payment by an insurer of a physician or health care provider and to verification of medical care or health care services apply to a physician or provider who:

> (1) is not a preferred provider included in the preferred provider network; and

> (2) provides to an insured:

>> (A) care related to an emergency or its attendant episode of care as required by state or federal law; or . . . .

Tex. Ins. Code § 1301.069.  Because it is undisputed that EHC and the physicians in the PA were not preferred providers, EHC and PA can recover under § 1301.103 only by virtue of § 1301.069.  Section 1301.069, in turn, would only provide EHC and PA relief if the care in question was "required by state or federal law."

### 1.  Whether the Care Was Required by Federal Law

Plaintiffs do not allege any state law that required them to provide the emergency medical services, although in their Original Petition the Plaintiffs allege that they abided by the Emergency Medical Treatment and Active Labor Act ("EMTALA").[21]  UHC argues that EHC was not required to provide the emergency services under EMTALA.[22]  EMTALA requires a hospital to care for patients experiencing a medical emergency.  42 U.S.C. § 1395dd.  UHC cites

---

[21]Plaintiffs' Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-1, p. 4 ¶¶ 9-10.

[22]UHC's Motion, Docket Entry No. 24, pp. 6-7.

a First Circuit case for the proposition that "even though a clinic or another office purports to offer 24-hour emergency care, if the facility does not meet the statutory definition of 'hospital,' EMTALA does not apply."[23]   The First Circuit identified the statutory definition of hospital as that contained in 42 U.S.C. 1395x(e).  Rodriguez, 402 F.3d at 48 ("As an amendment to the Social Security Act, EMTALA incorporates the Act's definition of a 'hospital.'"); accord Williams v. Women's Healthcare, 2010 WL 4628095, at *3 (M.D. Ala. November 8, 2010) (noting that a hospital must meet the definition of hospital in 42 U.S.C. § 1395x in order to be subject to EMTALA).  The definition of hospital set out in § 1395x(e) has many parts, including the requirement that

> in the case of an institution in any State in which State or applicable local law provides for the licensing of hospitals, (A) is licensed pursuant to such law or (B) is approved, by the agency of such State or locality responsible for licensing hospitals, as meeting the standards established for such licensing.

42 U.S.C. § 1395x(e)(7).

UHC argues that "[b]ecause EHC does not assert and cannot show that it was licensed as a hospital, EHC was not required by EMTALA to provide the emergency care at issue here."[24]  The Plaintiffs do not respond to UHC's argument, and the Plaintiffs acknowledge that

---

[23]Id. at 7 (citing Rodriguez v. Am. Int'l Ins. Co., 402 F.3d 45, 48 (1st Cir. 2005)).

[24]Id.

EHC was not licensed.[25]  EHC does not allege, either in its Original
Petition or in its Response to UHC's Motion, that it was approved
by the relevant state agency as meeting the licensing requirements.
Since EHC was not licensed, and does not argue or allege that it
was approved by the relevant state agency as meeting the licensing
standards, the court concludes that EHC was not required by EMTALA
to provide the emergency medical services at it issue in this case.


    2.  <u>Conclusion</u>

The Plaintiffs can recover on their Prompt Pay Act claim only
if they prove that they were required by state or federal law to
provide the services.  Because the court concludes that EHC was not
required by the only federal law invoked in EHC's petition and
because EHC has not alleged that there was a state law requiring
the services, the court will grant summary judgment on the
Plaintiffs' Prompt Pay Act claim.


**B.  The Chapter 541 Claim**

The Plaintiffs' Chapter 541 cause of action concerns whether
UHC should have paid EHC a facility fee for the emergency services
provided.[26]  EHC pleads that UHC was required to pay the fee under

---

[25]EHC's Response, Docket Entry No. 27, p. 11 ("[N]o such
licenses were required or obtainable by EHC during the relevant
time periods to this matter.").

[26]UHC notes that "there are two components to payments for
(continued...)

§§ 1301.069 and 1271.155.[27]

Section 843.002(24) defines "provider" for the purposes of the application of § 1271.155.  Tex. Ins. Code § 1270.001.  Section 1301.001(1-a) defines "health care provider" for the purposes of the application of § 1301.069.  Both statutory definitions require that the entity be "licensed or otherwise authorized."  If EHC was not "licensed or otherwise authorized," it was not a "provider" for the purposes of §§ 1301.069 and 1271.155.

Section § 1301.069 requires UHC to pay EHC for emergency services only if EHC qualified as a provider.  The statute clearly applies only to providers (and physicians); it states that the chapter "appl[ies] to a physician or provider."  Tex. Ins. Code § 1301.069.  It is less clear whether § 1271.155 requires an insurer only to reimburse providers or if the statute also requires an insurer to reimburse a "comparable facility".  Section

---

[26](...continued)
services provided in licensed hospital emergency rooms: a 'facility' fee and a 'professional' fee.  EHC submitted claims for facility fees to UHC, and PA submitted claims for professional fees."  UHC's Motion, Docket Entry No. 24, p. 1.  The briefing of the parties is restricted to the question of whether summary judgment is appropriate on the Chapter 541 cause of action only insofar as that count involves payments allegedly due to EHC.  Any claims for payments allegedly due to PA have not been addressed.  The court will therefore restrict its analysis to the question of whether the Chapter 541 cause of action regarding claims submitted by EHC should survive, and leave undisturbed the Chapter 541 cause of action regarding any claims submitted by PA.

[27]Plaintiffs' Original Petition, Exhibit 3 to Notice of Removal, Docket Entry No. 1-1, pp. 5-7 ¶¶ 13-14.

1271.155(a) is restricted in relevant part to "providers," but § 1271.155(b)(3) uses the term "comparable facility."

> (a) A health maintenance organization shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate.
>
> (b) A health care plan of a health maintenance organization must provide the following coverage of emergency care:
> . . .
>
>> (2) necessary emergency care shall be provided to covered enrollees, including the treatment and stabilization of an emergency medical condition; and
>>
>> (3) services originated in a hospital emergency facility or comparable facility following treatment or stabilization of an emergency medical condition shall be provided to covered enrollees as approved by the health maintenance organization, subject to Subsections (c) and (d).

Tex. Ins. Code § 1271.155 (version effective April 1, 2005, to February 28, 2010).[28]

From the face of the statute it is unclear whether the restriction to providers in § 1271.155(a) limits the applicability of the subsections that follow it, or if § 1271.155(a) and § 1271.155(b)(3) set out independent legal requirements with independent criteria of applicability.  In the latter case an

---

[28]The court's analysis tracks the arguments of the parties in focusing on § 1271.155(a) and § 1271.155(b)(3), but if § 1271.155(b)(2) were the crucial provision, the analysis would be no different, as "emergency care" is defined as "health care services provided in a hospital emergency facility or comparable facility to . . . ."  Tex. Ins. Code § 843.002(7) (version effective September 1, 2003, to March 31, 2009).

insurer would be required to reimburse an entity that qualified as a "comparable facility" even though that entity was not a "provider."  The parties do not directly and adequately address this question,[29] and the court has found no cases construing this statute in detail.  Because UHC as the movant bears the burden of proving that it is entitled to summary judgment, the court will assume, without deciding, that § 1271.155 requires an insurer to reimburse an entity providing services if that entity is either a provider or a comparable facility.  Given the briefing in this case and the difficulty of interpreting § 1271.155, the court will grant summary judgment against EHC on its Chapter 541 claims only if UHC has established that there is no question of fact that EHC was neither a provider nor a comparable facility.

---

[29]UHC asserts, without supporting argument, that the provider requirement is a threshold for the applicability of the rest of the section: "Of course, the services must be rendered by a licensed physician or provider to qualify in the first place, as set out above.  In addition, the 'emergency care' must have been health care services provided in a hospital emergency facility or comparable facility."  UHC's Motion, Docket Entry No. 24, p. 12 (internal quotation marks and emphasis omitted); accord UHC's Reply, Docket Entry No. 28, p. 7 ("The overarching problem with Plaintiffs' argument is that they substitute the term 'comparable facility' (where the services are provided) for the term 'provider' (whose emergency services must be covered).  EHC must be a 'provider' for its charges to be entitled to coverage in the first place.").

1.   <u>Was EHC a Comparable Facility?</u>

UHC presents multiple interlocking arguments that EHC was not a "comparable facility." The court has carefully examined these arguments and the legal authority cited in support, and concludes that the arguments, both individually and collectively, are insufficient to satisfy UHC's burden on summary judgment.

First, UHC argues that the amendments to Chapter 1301[30] made after the services in question were rendered show that entities such as EHC are not entitled to a facility fee.

> Before March 1, 2010, § 1301.155 covered only emergency care provided "in a hospital emergency facility or comparable facility." However, effective March 1, 2010, "freestanding emergency medical care facilit[ies]" were added to the list of places where "emergency care" is rendered. At the same time these revisions were made, the legislature set up a comprehensive licensing and regulatory regime for freestanding emergency medical care facilities.[31]

UHC then cites a Texas case stating that "[w]hen the legislature enacts an amendment, we may presume that it thereby intended to change the original act by creating a new right." <u>Ford Motor Co. v. Motor Vehicle Bd.</u>, 21 S.W.3d 744, 763 (Tex. App.—Austin 2000,

---

[30]The court notes that a similar amendment to § 1271.155 became effective on March 1, 2010, by the same act of the Texas legislature. Act of June 19, 2009, 81st Leg., R.S., 2009 Tex. Sess. Law Serv. Ch. 1273.

[31]UHC's Motion, Docket Entry No. 24, p. 14 (internal citations omitted).

pet. denied).[32]   UHC argues that "if the old statutory scheme already applied to freestanding, non-hospital, unlicensed emergency clinics like EHC, there would have been no need for the amendments."[33]

In articulating the rule of interpretation emphasized by UHC, the Ford Motor court cited a case that, in turn, relied on a prominent treatise on statutory construction.   21 S.W.3d at 763 (citing Durish v. Channelview Bank, 809 S.W.2d 273, 277 (Tex. App.—Austin 1991, writ denied) (citing 1A Sutherland Statutory Construction § 22.30, at 265 (4th ed. 1985)).   The current version of the treatise states:

> An amendment of an unambiguous statute indicates a purpose to change the law, whereas no such purpose is indicated by the mere fact of an amendment of an ambiguous provision.

1A Sutherland Statutory Construction § 22:30 (7th ed. 2011).   The court concludes the term "comparable facility" is ambiguous.   It is not defined in the relevant chapter, and the plain meaning of the term admits of widely divergent, and even contrary, interpretations.   Because the term is ambiguous, it is not clear whether the Texas legislature was creating a new right or merely interpreting the existing version of the relevant statutes.   The court therefore declines to infer from the statutory amendments

---

[32]Cited in UHC's Motion, Docket Entry No. 24, pp. 14-15.

[33]Id. at 15.

that freestanding emergency facilities, and EHC, were not comparable facilities before the amendments.

Second, UHC argues that statutory definitions of "health care facility" in other contexts require the entity to be licensed.

> [S]imilar laws in other contexts specifically define the term "health care facility," and unlicensed urban clinics like EHC are not on the list. *See, e.g.,* Tex. Health & Safety Code § 108.002 ([10]). In another statute, the legislature passed a law specifically requiring a license before credentialing a provider as an authorized "health care facility[]" . . . 28 Tex. Admin. Code § 10.82(a)(1)(E). The provisions requiring "health care providers" to be licensed or otherwise authorized under Chapter 1301 and the HMO Act should be construed the same way when applied to EHC. *See* Tex. Gov't Code § 311.023 (in construing a statute, whether ambiguous or not, the Court may consider common law and statutory provisions on the same or similar subjects).[34]

The court is not persuaded that the statutes cited by UHC are sufficient to restrict the understanding of "health care facility" to facilities with licenses. Section 108.002(10) of the Health & Safety Code provides that a birthing center and a free-standing imaging center both qualify as a "health care facility," and UHC has not established that an entity must be licensed to be a birthing center or a free-standing imagining center. The provision from the Administrative Code cited by UHC provides that "the credentialing process for health care facilities" must include "evidence of state licensure." 28 Tex. Admin. Code § 10.82(a)(1)(E). But the language of this statute does not

_____

[34]UHC's Reply, Docket Entry No. 28, pp. 10–11.

foreclose the possibility that an entity could be a "health care facility" and not be credentialed for the program dealt within this chapter. Moreover, the section of the Government Code cited by UHC provides that, "[i]n construing a statute . . . a court may consider . . . (4) common law or former statutory provisions." Tex. Gov. Code § 311.023. The statutes cited by UHC are current statutory provisions, not "former statutory provisions." The two statutes dealing with the term "health care facility" do not warrant the conclusion that an entity needs a license to be a "comparable facility."[35]

Third, UHC argues that it would be "contrary to the rationale" behind the statutory provisions to consider EHC a comparable facility.[36]

The rationale behind treating out-of-network services the

---

[35]In its initial Motion, UHC also emphasizes the importance of letters written by a Texas Department of Insurance official, one of which states that "although carriers are required to pay for out-of-network emergency care services, carriers are not required to pay for services performed by an unlicensed entity. As such, carriers are not required to pay facility charges billed by freestanding emergency centers that do not have a license from the Department of State Health Services." UHC's Motion, Docket Entry No. 24, p. 4 (emphasis omitted) (quoting January 19, 2006, Letter from Jennifer Ahrens to John Oates, Exhibit A to UHC's Motion, Docket Entry No. 24-1, p. 2). UHC has not established the process that produced these letters, and therefore has not established that they are binding on the court or even entitled to deference. The Plaintiffs have moved to strike these letters. Plaintiffs' Response, Docket Entry No. 27, p. 10. Because the court will not rely on these letters, the Plaintiffs' motion to strike will be denied as moot.

[36]UHC's Motion, Docket Entry No. 24, p. 13.

-18-

same as in-network services in the context of an
emergency finds expression in § 1301.069 – when emergency
care is legally mandated such that one cannot pick his
patients based on ability to pay, it makes sense to treat
him the same as a "preferred provider" that has an in-
network contract with the insurer.[37]

UHC argues that "EHC was not comparable to a 'hospital emergency
facility' in all the ways that matter" since EHC was not licensed
or regulated like a hospital and EHC was not required to provide
emergency medical services like a hospital.[38]

Assuming that UHC's premises in this argument are all true,
UHC's argument identifies two relevant considerations
differentiating EHC from a hospital: licensing/regulation and the
requirement to provide services.   However, EHC has provided
competent summary judgment evidence supporting the comparability of
EHC to a hospital.   Attached to Plaintiffs' Response is an
affidavit, supported by exhibits, given by the former Chief
Executive Officer of EHC,[39] containing the following statement:

> EHC began operations in 1997 when it opened its
> freestanding emergency medical center in an approximate
> 15,000 square foot facility with 2 major treatment rooms,
> 5 mid-level treatment rooms and 7 minor treatment rooms.
> The facility was open 24 hours a day, 7 days a week and
> was staffed by board certified emergency room doctors and
> ER trained nurse practitioners.   The facility had full
> lab     capabilities     and     radiology/imaging
> capabilities. . . . The Centre obtained The Joint

---

[37]Id.

[38]Id.

[39]Affidavit of Dick McNairy, attached to EHC's Response, Docket
Entry No. 27-1, p. 1.

-19-

> Commission's Evidence of Standards Compliance, its
> Certificate of Accreditation for Clinical Laboratory
> License for examinations or procedures from the Centers
> for Medicare & Medicaid Services and the Department of
> State Health Services Certificate of X-Ray License. . . .
> EHC complied with the requirements of the Emergency
> Medical Treatment and Active Labor Act (EMTALA) and
> operated as any other hospital based emergency room.[40]

The Plaintiffs argue that these facts show that EHC was comparable to a hospital, and was therefore a comparable facility.[41]  UHC has not established that the points of differentiation that UHC emphasizes (licensing/regulations and requirement to treat) are the relevant considerations and that the points of comparability that the Plaintiffs emphasize (facts concerning the operation of EHC and its capabilities) should be disregarded.  The facts alleged in the McNairy affidavit are sufficient to establish a fact-question on whether EHC was comparable to a hospital as contemplated in the relevant statutes.

The court concludes that there remains a material question of fact regarding whether EHC was a comparable facility under the meaning of Tex. Ins. Code § 1271.155.  The court will deny summary judgment on the Plaintiffs' Chapter 541 cause of action insofar as it relies on § 1271.155.

---

[40]Id.

[41]Plaintiff's Response, Docket Entry No. 27, pp. 12-14.

2.   Was EHC a Provider?

Insofar as the Plaintiffs' Chapter 541 cause of action relies on § 1301.069, the Plaintiffs can avoid summary judgment only if there is a fact question regarding whether EHC was a "provider."[42] As the court explained above, to be a "health care provider," EHC would have to be "licensed or otherwise authorized."  Tex. Ins. Code § 1301.001(1-a).  There is no dispute that EHC was not licensed.  EHC's contention that it was a provider therefore turns on whether it was "otherwise authorized."  The court concludes that McNair's affidavit and its exhibits are insufficient to create a fact question whether EHC was "otherwise authorized."

UHC argues that to be "otherwise authorized" an entity must be authorized by the state.[43]  The Plaintiffs' argument that it met the statutory definitions of provider is premised on its contention that it qualified as a "comparable facility."

> [Freestanding emergency centers] that satisfy the definition of comparable facility are "otherwise authorized" to provide health care services by Insurance Code §§ 1271.155 and 1301.155 and their predecessors.  It would make no sense for the legislature to require that a comparable facility be paid for providing emergency health care services, and to then conclude that a comparable facility is not authorized to provide emergency care.[44]

The contradiction urged by the Plaintiffs does not exist in the

---

[42]See supra p. 12.

[43]UHC's Reply, Docket Entry No. 28, pp. 11-12.

[44]Plaintiffs' Response, Docket Entry No. 27, p. 26.

-21-

context of § 1301.069, which only refers to providers and not to a comparable facility.  It is true that Section 1301.155 (defining "emergency care") is referenced in § 1301.053 (requiring that insurers pay for emergency care) and uses the term "comparable facility."  Tex. Ins. Code § 1301.155 (effective April 1, 2005, to February 28, 2010).  However, the text of § 1301.0053 restricts its requirements to "nonpreferred providers" and the text of § 1301.069 expands the § 1301.0053 requirements to "a physician or provider."[45] The court concludes that the most natural reading of "otherwise authorized" is that the entity must be authorized by the state to carry on its medical activities.

The only summary judgment evidence advanced by the Plaintiffs on this question is in the McNair affidavit and its exhibits. McNair stated that

> The Centre obtained The Joint Commission's Evidence of Standards Compliance, its Certificate of Accreditation for Clinical Laboratory License for examinations or procedures from the Centers for Medicare & Medicaid Services and the Department of State Health Services Certificate of X-Ray License.[46]

Since the Joint Commission is not a governmental body, any authorization it may have conferred is not relevant to whether EHC

---

[45]The court also notes that § 1301.0053 was not in effect during time period relevant to the Plaintiffs claims, but was rather added by Act of June 17, 2011, 82st Leg., R.S., 2011 Tex. Sess. Law Serv. Ch. 288.

[46]Affidavit of Dick McNairy, attached to EHC's Response, Docket Entry No. 27-1, p. 1.

was a provider.[47]   The two other instances of accreditation or registration both appear to be by government entities, but both are for very limited purposes.  The first consists of accreditation and registration certificates for the laboratory at EHC[48] and the second is a certificate authorizing the use of X-Ray equipment.[49]   These authorizations are insufficient to raise a fact question as to whether EHC as a general medical facility was authorized to conduct the range of its medical services.  The court concludes that the Plaintiffs have failed to raise a fact question regarding whether EHC was "otherwise authorized" and therefore a "provider," as required to recover under Chapter 541 based on § 1301.069.  The court will enter summary judgment against the Plaintiffs on the Chapter 541 claims insofar as those claims implicate Chapter 1301.

## C.   ERISA Preemption Plaintiffs' Claims

The Employee Retirement Income Security Act ("ERISA") preempts certain state law claims.

---

[47]Exhibit A to Affidavit of Dick McNairy, attached to EHC's Response, Docket Entry No. 27-1, p. 4 ("The Joint Commission is an independent, not-for-profit, national body that . . . .").

[48]e.g., Centers for Medicare & Medicaid Services, Certificate of Accreditation, Exhibit B to Affidavit of Dick McNairy, attached to EHC's Response, Docket Entry No. 27-1, p. 6.

[49]Department of State Health Services, Certificate of X-Ray Registration, Exhibit E to Affidavit of Dick McNairy, attached to EHC's Response, Docket Entry No. 27-1, p. 9.  UHC correctly notes that the X-Ray certificate "belongs to a non-party-entity, Imaging Willowbrook, LLC."  UHC's Reply, Docket Entry No. 28, p. 3.

> Except as provided in subsection (b) of this section,
> the provisions of this subchapter and subchapter III of
> this chapter shall supersede any and all State laws
> insofar as they may now or hereafter relate to any
> employee benefit plan.

29 U.S.C. § 1144. The Fifth Circuit has set out a two-part test

for whether a claim is preempted by ERISA under § 1144(a):

> A defendant pleading preemption must prove that: (1)
> the claim addresses an area of exclusive federal
> concern, such as the right to receive benefits under
> the terms of the Plan; and (2) the claim directly
> affects the relationship among traditional ERISA
> entities-the employer, the plan and its fiduciaries,
> and the participants and beneficiaries.

Bank Of Louisiana v. Aetna U.S. Healthcare Inc., 468 F.3d 237,

242 (5th Cir. 2006) (internal quotation marks omitted).


### 1.   The Plaintiffs' Chapter 541 Claims

There is a relevant exception to the general ERISA preemption

doctrine. ERISA's "Savings Clause" provides that "[e]xcept as

provided in [the "Deemer Clause"], nothing in this subchapter shall

be construed to exempt or relieve any person from any law of any

State which regulates insurance, banking, or securities."

29 U.S.C. § 1144(b)(2)(A). ERISA's Deemer Clause limits the

exception provided in the Savings Clause:

> Neither an employee benefit plan . . . nor any trust
> established under such a plan, shall be deemed to be an
> insurance company or other insurer, bank, trust company,
> or investment company or to be engaged in the business
> of insurance or banking for purposes of any law of any
> State purporting to regulate insurance companies,

-24-

insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B). The Supreme Court had held that only insured plans are exempted from ERISA preemption by the Savings Clause, and that the Deemer Clause preserves ERISA preemption for self-funded plans. FMC Corp. v. Holliday, 111 S. Ct. 403, 409 (1990).[50]

UHC argues that all of the Plaintiffs' claims under the Texas Insurance Code are preempted because "Plaintiffs' claims are based on the notion that UHC should have paid benefits for its insureds and plan members."[51] UHC has not adequately addressed whether the Savings Clause exception applies to the claims at issue in this case. UHC alleges that "of the 23,091 claim lines of data on claims for benefits submitted by Plaintiffs, which Defendants recently produced, 16,000 were for self-funded plans."[52] Elsewhere in the same footnote, UHC refers to its Notice of Removal (Docket

---

[50]A treatise makes the point clearly: "The ERISA deemer clause has served as a basis for courts to draw a distinction, for the purposes of ERISA preemption, between employee welfare benefit plans that offer benefits through insurance (i.e., 'insured' plans) and employee welfare plans through which benefits are paid directly by the plan sponsor (i.e., 'self-funded' plans). While insured plans are generally subject to state insurance regulation by operation of the ERISA savings clause, self-funded plans are exempt from state insurance regulation by operation of the ERISA deemer clause." Samantha E. McMillan, ERISA: A Comprehensive Guide § 9.04 (Paul J. Schneider & Brian M. Pinheiro, eds., 4th ed. 2012).

[51]UHC's Motion, Docket Entry No. 24, p. 19.

[52]Id. at 19 n.10.

Entry No. 1) and its Unopposed Motion to Seal (Docket Entry No. 2), which has spreadsheets of the claims filed as well as summary plan descriptions for certain plans, with a supporting affidavit identifying certain of the plans as self-funded.[53]

The court concludes that UHC has failed to establish that ERISA preempts the Plaintiffs' Texas Insurance Code Claims. UHC provides no support for its allegation that 16,000 claim lines of data concern self-funded plans. And while UHC has provided some evidence that the specific plans identified in the affidavit were self-funded, the evidence highlighted in UHC's briefing is not sufficient to support a finding of preemption. Moreover, UHC has not established that the Plaintiffs Chapter 541 cause of action addresses "an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan." <u>Bank of Louisiana</u>, 468 F.3d at 242. The court will therefore deny UHC summary judgment on its contention that the Plaintiffs Texas Insurance Code causes of action are preempted by ERISA.

---

[53]<u>Id.</u>; UHC's Reply, Docket Entry No. 28, p. 17 ("Rather than burden the record with thousands of claims and potentially hundreds of plans, UHC sought a ruling on three exemplar claims under two such plans. . . . Because the Texas Insurance Code does not apply to self-funded plans, at a minimum the Court should grant summary judgment that Plaintiffs take nothing on their Insurance Code claims as to self-funded plans.").

2.  The Plaintiffs' Quantum Meruit Claim

A panel of the Fifth Circuit has held that a quantum meruit claim was preempted:

> Those claims [including quantum meruit], if not preempted, would allow any provider who has provided care for which the ERISA plan denied coverage to challenge the ERISA plan's interpretation of its policies in state court. That outcome would run afoul of Congress's intent that the causes of action created by ERISA be the exclusive means of enforcing an ERISA plan's terms, and permit state law to interfere with the relations among ERISA entities.

Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co., 662 F.3d 376, 386-87 (5th Cir. 2011) reh'g en banc granted, 678 F.3d 940 (5th Cir. 2012).

In bringing their quantum meruit claim the Plaintiffs are challenging UHC's interpretation of its policies in denying claims submitted by the Plaintiffs for care they provided.  In arguing for the viability of their quantum meruit claim, Plaintiffs argue that

> UHC issued insurance policies or plans, or provided third party administration on claims which UHC, for consideration, assumed the risk of payment on behalf of the patients.  UHC promised to pay a sum of money if a specific contingent event occurred (i.e., services were provided).[54]

Because the Plaintiffs' quantum meruit claim relies on the alleged violation of a promise made in an ERISA plan, the Plaintiffs are using the quantum meruit claim to challenge the right to receive benefits under the plan and to affect the relationship among ERISA

_____

[54]Plaintiffs' Response, Docket Entry No. 27, p. 36.

entities.   The Plaintiffs ask the court to allow them to amend their Original Petition to plead a cause of action under ERISA, in the event that the court finds any of their claims preempted.[55]  But the Plaintiffs have not indicated what claim they would bring under ERISA and have therefore not established that granting leave to amend would be appropriate.   The court will therefore dismiss Plaintiffs' quantum meruit cause of action because it is preempted by ERISA.[56]

## IV.   Conclusion and Order

For the reasons stated above, the court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Partial Summary Judgment and Brief in Support (Docket Entry No. 24):

1. The Plaintiffs' cause of action identified as "Count Two: Violations of the Texas Prompt Pay Statute and Texas Insurance Laws" in Plaintiffs' Original Petition (Docket Entry No. 1-1, pp. 10-11, ¶¶ 23-25) is **DISMISSED WITH PREJUDICE;**

2. The Plaintiffs' cause of action identified as "Count One: Insurance Code Violations" in Plaintiffs' Original Petition (Docket Entry No. 1-1, pp. 8-10, ¶¶ 18-22), insofar as it relies on violations of Chapter 1301 of the Texas Insurance Code and insofar as it concerns payments allegedly due to EHC only, is **DISMISSED WITH PREJUDICE.** Insofar as Count One relies on alleged violations of Chapter 1271 of Texas Insurance Code, summary judgment is

---

[55]Id. at 8 n.1.

[56]Because the court concludes that the quantum meruit claim is preempted, the court does not reach UHC's argument that the quantum meruit claim fails on the merits.   UHC's Motion, Docket Entry No. 24, pp. 20-21.

**DENIED.**   Insofar as Count One relates to PA, rather than EHC, summary judgment is **DENIED.**

3.   The Plaintiffs' cause of action identified as "Count Three: Quantum Meruit" in Plaintiffs' Original Petition (Docket Entry No. 1-1, pp. 11-12, ¶ 26) is **DISMISSED WITH PREJUDICE.**

4.   The Plaintiffs' motion to strike (Docket Entry No. 27, p. 10, ¶ 10) is **DENIED as moot.**

5.   The court concludes that this case is appropriate for mediation.   If the parties are unable to settle the case within the next thirty days they will provide the court the name and address of an agreed mediator.

Any relief not expressly granted is **DENIED.**

**SIGNED** at Houston, Texas, on this 31st day of August, 2012.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-29-